1
2
3
4
5
6
7                           UNITED STATES DISTRICT COURT
8                        NORTHERN DISTRICT OF CALIFORNIA
9

10   DAREN HEATHERLY, et al.,                    Case No.  14-cv-03458-RS
                    Plaintiffs,
11
                v.                               ORDER GRANTING PLAINTIFFS'
12                                               MOTION FOR ENTRY OF DEFAULT
     GD LIQUOR AND FOOD, et al.,                 JUDGMENT
13
                    Defendants.
14

15

16                          I.      INTRODUCTION

17          Pursuant to their unanswered claims under the Americans with Disabilities Act ("ADA"),

18   42 U.S.C. § 12101 *et seq.*, California's Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54, and

19   the Unruh Civil Rights Act, Cal. Civ. Code § 51, plaintiffs Daren Heatherly and Irma Ramirez

20   seek entry of default judgment, statutory damages, attorney fees and costs, and injunctive relief

21   against defendants GD Liquor and Food, Michael and Betty Asher as joint tenants, and Dhirendra

22   Shrestha doing business as GD Liquor and Food.  Because consideration of the factors set forth in

23   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), weighs heavily in plaintiffs' favor, their

24   motion for entry of default judgment is hereby granted.

25                          II.     BACKGROUND[1]

26          Plaintiffs, husband and wife, filed this action on July 30, 2014 after encountering

27   _____

28   [1] The factual summary herein is based on the averments in the complaint, which must be taken as
     true for purposes of a motion for entry of default judgment.

United States District Court
Northern District of California

significant accessibility challenges on two separate visits to GD Liquor and Food ("GD"), a retail

establishment in Santa Rosa, California.  Heatherly suffers from multiple sclerosis and has

undergone a left hip replacement; Ramirez has post-polio syndrome.  Both rely on wheelchairs to

travel about in public.  On their initial March 5, 2014 trip to GD, they encountered numerous

obstacles to accessing the store safely.  Noticing the lack of any van-accessible parking spaces,

Ramirez pulled plaintiffs' van into a space marked with an access symbol.  Once deployed, the

van's ramp protruded into a neighboring parking space.  Without an accessible route from the

ramp onto the sidewalk, Heatherly was forced to wheel around the rear of the van to approach the

store's entrance.  No barriers or wheel stops had been installed to ensure other patrons' cars did

not encroach on the width of the pathway leading up the store.  Plaintiffs faced additional hurdles

entering through GD's narrow glass double doors; one was pinned shut, and only with great

difficulty was Heatherly able to squeeze through the single open door.

In sum, the architectural barriers plaintiffs encountered included: (a) a lack of signage

indicating accessible pathways and entrances; (b) no designated van accessible parking spot; (c) an

inaccessible store entrance with two narrow glass doors and no kick plates; (d) no accessible route

of travel to the entrance; (e) a lack of curb-cuts to such an access aisle; and (f) no wheel stops

ensuring a 36-inch accessible pathway on the sidewalk.  These difficulties caused both plaintiffs to

experience significant distress, discomfort, and embarrassment.

Ramirez subsequently mailed letters to both the store manager and its landlord notifying

them of these deficiencies and suggesting solutions.  On March 24, 2014, she received an

unsigned, apologetic response stating that the store's door had been repaired, GD's landlord had

been informed of the additional issues, and that Ramirez should expect to receive a further update.

To date, she has not.  Plaintiffs' second June 14, 2014 visit to GD was hampered by substantially

all of the same obstacles, and caused similar emotional hardship.  They were thus deterred from

returning to GD a third time the next day.

After defendants failed to answer or otherwise respond to the complaint, plaintiffs filed a

motion to enter default on December 9, 2014, and default was entered on December 15, 2014.

Shrestha lodged an answer the following day, on December 16.  Given the untimeliness of Shrestha's filing, defendants were ordered to show cause on April 15, 2015, which offered all of them an opportunity to move for the entry of default to be set aside.  Defendants filed no response.  A June 12, 2015 order thus issued directing plaintiffs to move for entry of default judgment.

The present motion was filed on July 2, 2015 accompanied by proof of service by mail to both Shrestha and the Ashers, and goes unopposed.  Alongside their motion, plaintiffs offer a stipulation to limit their claim for statutory damages to $8,000 each, rather than pursuing the full $12,000 to which they aver they are each entitled.  They furthermore request that specific remedial measures be ordered to bring GD's premises into compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"); $2,177.60 in out-of-pocket litigation-related costs; and $15,696 in attorney fees.  Defendants made no appearance at the hearing on this motion.

### III.    LEGAL STANDARD

Following entry of default, courts may exercise their discretion as to whether default judgment should be entered.  *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In doing so, they must consider: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the possibility of prejudice to the plaintiff; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  All factual allegations in plaintiffs' complaint, except for those relating to damages, should be taken as true. *Tele Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Where relief is granted, it should not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

### IV.    DISCUSSION

A.  *Eitel* Factors

    *1.  The Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint*

Under *Eitel*, plaintiffs must state a cognizable claim on which they can recover.  While the

United States District Court
Northern District of California

complaint pleads violations of the ADA, the Unruh Act, and the CDPA, their motion addresses claims under only the first two of these provisions. Because these two provisions establish a basis for plaintiffs to receive all of their requested relief, only the averred ADA and Unruh Act violations will be assessed here.

a.   ADA Claim

Congress passed the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Title III prohibits discrimination against disabled individuals by public accommodations. *Id.* at § 12182(a). To recover on a claim for discrimination under the ADA, a plaintiff must prove (1) he or she is disabled within the meaning of the statute, (2) defendants are private entities that own, lease (or lease to), or operate a place of public accommodation, and (3) the plaintiff was denied public accommodations by the defendant because of his or her disability. *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.,* 603 F.3d 666, 670 (9th Cir. 2010). The third element is satisfied when there is a violation of applicable accessibility standards. *Chapman v. Pier 1 Imports (U.S.), Inc.,* 631 F.3d 939, 945 (9th Cir. 2011). The Title III accessibility standards come in three broad categories: the "new construction" provisions, which apply to public accommodations constructed after January 26, 1992; the "alteration" provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and the "readily achievable" provisions, which apply to unaltered portions of buildings constructed before January 26, 1992. *See Moeller v. Taco Bell Corp.,* 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011). It is under this third category that plaintiffs position their claim.

The first two elements of a cognizable ADA claim are clearly met here. Plaintiffs offer facts demonstrating they each have a "disability" within the meaning set forth by the ADA. 42 U.S.C. § 12102(1), (2) (defining the term as a "physical or mental impairment that substantially limits one or more major life activities" such as walking and standing). GD is, furthermore, averred to be a place of "public accommodation" owned and/or operated by the named defendants; plaintiffs describe it as a sales establishment open to the public and run by Shrestha, the business

1   manager and tenant, and the Ashers, his landlords.  *Id.* § 12181(7)(E).

2       The third element is likewise satisfied.  Plaintiffs detail the numerous barriers that on two

3   occasions hampered, and on a third deterred, them from accessing GD in a manner on par with

4   non-disabled store patrons.  They furthermore allege that the described obstacles and lack of

5   amenities contravene the ADAAG and thus trigger ADA liability.  *See Vogel v. RiteAid Corp.*, 992

6   F. Supp. 2d 998, 1012 (C.D. Cal. 2014).  To name just a few applicable ADAAG sections, 4.6

7   requires covered establishments to provide accessible parking spaces, including those accessible

8   for vans with wheelchair lifts and ramps; 4.6.4 requires that accessible spaces be marked with the

9   access symbol; 4.3 mandates the presence of an accessible route to such parking spots and

10  recommends signage marking the route; and 4.8.3 specifies 36 inches as the minimum clear width

11  for accessible ramps.  Plaintiffs' averments, if taken as true, thus establish that the barriers they

12  encountered are prohibited under the ADA and kept them from enjoying full and equal access to

13  DG.

14      Plaintiffs, in addition, sufficiently allege that removal of at least some of these barriers has

15  been "readily achievable," or in other words "easily accomplishable and able to be carried out

16  without much difficulty or expense," as of January 26, 1992 and thereafter.  42 U.S.C. § 12181(9).

17  Although they decline to spell out the necessary changes, concomitant costs, and effects GD might

18  incur as a result of making such changes, *see* 42 U.S.C. § 12181(9) (listing factors that bear upon

19  whether removal of a barrier is "readily achievable"), plaintiffs do aver that defendants were

20  aware of the enumerated barriers; could have availed themselves of particular tax deductions and

21  credits applicable to barrier removal; and refused to do so.  Ramirez's letters also pointed out that

22  defendants needed only blue paint and an accessibility symbol stencil to designate accessible

23  parking and an accessible route into the store.  Federal regulations, moreover, specify that

24  installing ramps and curb cuts, widening doors, and creating designated accessible parking spaces

25  are all examples of "readily achievable" public accommodation modifications.  *See* 28 C.F.R. §

26  36.304(b).

27      Finally, even if a defendant demonstrates that removal of certain barriers is not "readily

28

ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT
CASE NO.  14-cv-03458-RS

United States District Court
Northern District of California

1    achievable," an establishment is still deemed discriminatory if it fails to make its "goods, services

2    [and] advantages . . . available through alternative methods if such methods are readily

3    achievable." 42 U.S.C. § 12182(b)(2)(A)(v).  Having declined to mount even a nominal defense

4    to this action, defendants offer no case that removing the barriers plaintiffs allegedly encountered

5    is not a "readily achievable" task.  Plaintiffs thus state a cognizable ADA claim, and are

6    accordingly entitled to the attorney fees and injunctive relief the Act affords. *See Id.* § 12188(a).

7                                 b.   Unruh Act Claim

8           California law proscribed disability discrimination well before Congress enacted the ADA.

9    Together, the Unruh Act and the CDPA enable "the principal sources of state disability access

10   protection." *Jankey v. Song Koo Lee*, 55 Cal. 4th 1038, 1044 (2012).  While their overlap with the

11   ADA is considerable, these state law provisions offer even broader protections and remedies not

12   available under federal law.  *Id.*  Both, for example, allow plaintiffs to recover damages in addition

13   to the injunctive relief and attorney fees the ADA affords.  Cal. Civ. Code §§ 52(a), 54.3.5.

14          Further, after the ADA's passage, the California legislature amended the CDPA and the

15   Unruh Act to provide that a violation of the ADA per se constitutes a violation of each of these

16   statutes.  Recovery under both state provisions is not permitted, however.  *Id.* §§ 51(f), 54(d);

17   *Munson v. Del Taco, Inc.*, 46 Cal .4th 661, 685 (2009).  Plaintiffs' ADA claim thus also gives rise

18   to a cognizable Unruh Act claim and entitles them to its remedies.  Cal. Civ. Code § 52(a)

19   (affording prevailing Unruh Act plaintiffs a minimum of $4,000 in statutory damages per

20   discriminatory incident, in addition to attorney fees).

21                            2.  *Prejudice to Plaintiffs*

22          Defendants have failed to respond timely or otherwise to defend this action.  Plaintiffs,

23   meanwhile, continue to suffer discrimination stemming from GD's failure to comply with the

24   ADAAG, despite having received Ramirez's letter and notice of this suit.  Absent entry of default

25   judgment, GD's unlawful conduct is likely to persist, leaving plaintiffs without recourse.  Because

26   plaintiffs will otherwise suffer prejudice, this factor militates in favor of entering default

27   judgment.

28                                              ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT
                                                CASE NO.  14-cv-03458-RS

United States District Court
Northern District of California

1

### 3. Sum of Money at Stake

This factor balances the amount of money at stake against the gravity of defendants'

conduct.  Default judgment is disfavored where the judgment amount would be disproportionate to

the wrongdoing alleged.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at

*12 (N.D. Cal. 2007).  Here, plaintiffs seek a total of $33,873.60, including damages, attorney

fees, and costs.  Injunctive relief will necessitate that defendants incur additional expenses to

remedy GD's accessibility issues.  As mentioned, however, the ADA limits liability to those

remedies "readily achievable," cabining the financial burden they impose.

Other district courts in California have levied financial liabilities on defendants in

disability discrimination cases subject to motions for entry of default judgment similar to those

requested here.  *See, e.g., Vogel*, 992 F. Supp. 2d at 1012 (approving a judgment of $13,739.20 in

a case brought by a single plaintiff); *Moore v. Cisneros*, 2012 WL 6523017, at *4 (E.D. Cal. Dec.

13, 2012) (designating a judgment of $10,119.70 as neither a "relatively large sum of money" nor

"unreasonable in light of the allegations in the complaint"); *Feezor v. Del Taco, Inc.*, 431 F. Supp.

2d 1088, 1091 (S.D. Cal. 2005) (approving $12,000 in statutory damages under the Unruh Act for

plaintiff's three visits to defendant establishment).  Given that the present case involves two

plaintiffs, it is fair to assess the requested judgment amount on a per-plaintiff basis.  Halving

plaintiffs' total request yields a per-plaintiff award of $16,936.80.  This sum is not materially

higher than amounts approved in similar cases, and plaintiffs have already stipulated to forego

$4,000 each, a third of the amount in statutory damages to which they could otherwise lay claim.

The judgment for which plaintiffs move is therefore within reason.

### 4. Potential Disputes Concerning Material Facts

Since defendants declined to oppose this action, the factual allegations set forth in the

complaint face no dispute that would preclude entry of default judgment.  This factor therefore

favors entry of default judgment.

### 5. Whether Default Was Due to Excusable Neglect

The record offers no basis to conclude defendants' default was the result of excusable

1   neglect.  Service of the summons and complaint was effectuated on Shrestha via substituted

2   service on September 14, 2014, and on the Ashers via personal service on September 17, 2014.

3   *See* Return of Service, Docket No. 6.  It was only after entry of default nearly three months later

4   that Shrestha attempted to address plaintiffs' claims in his untimely answer.  Defendants had

5   months to request that the entry of default be set aside; the Court, moreover, expressly extended

6   such an opportunity in April 2015, offering defendants until May 15 to show cause.  Its further

7   June 12 order directing plaintiffs to file the present motion by July 2 still did not elicit a word from

8   defendants, who now offer no opposition.  Consideration of this factor therefore supports entry of

9   default judgment.

10              *6.   Policy Favoring Decisions on the Merits*

11          While "[c]ases should be decided upon their merits whenever reasonably possible,"

12   defendants' failure to appear and defend against this action precludes a merits-based decision.

13   *Eitel*, 782 F.2d at 1472.  Default judgment is therefore an appropriate means by which to ensure

14   vindication of plaintiffs' rights and to dispose equitably of this action.

15          The *Eitel* factors unequivocally favor entry of default judgment.  Accordingly, plaintiffs'

16   motion must be granted.

17      B.   Amount and Nature of Plaintiffs' Recovery

18          Plaintiffs' allegations are generic to all defendants as operators, owners, lessors, and/or

19   lessees of GD.  The ADA holds defendants in all such various capacities jointly and severally

20   liable.  *See Botosan v. McNally Realty,* 216 F.3d 827, 832 (9th Cir. 2000).  The defendants here

21   are thus held jointly and severally liable for the remedies prescribed by this entry of default

22   judgment.

23              *1.   Injunctive Relief*

24          Injunctive relief is available to plaintiffs under both the ADA and the Unruh Act.  *See* 42

25   U.S.C. § 12188(a)(2), Cal. Civ. Code § 52.1(b).  The ADA requires a showing that defendants

26   violated the ADAAG, and that removal of the accessibility barriers at issue is "readily

27   achievable," as discussed above.  Having made such a showing, plaintiffs are entitled to an order

28

compelling defendants to remove the architectural barriers cited in plaintiffs' complaint insofar as they violate the ADAAG.  Specifically, defendants are ordered to: install a handicap and van-accessible parking stall with a 96-inch access aisle and curb cut offering walkway access to GD's entrance and appropriate signage; install a doorway with at least one door that provides a minimum clear opening of 32 inches from the face of the door to the opposite door stop when the door is open 90 degrees; adjust the entrance door pressure to 5 pounds or less; and ensure a minimum 36-inch wide path for accessible travel on the walkway to the front of the store by removing obstacles and installing wheel stops in front of each parking space.  Such measures must be completed on or before July 31, 2016.

### 2.   Statutory Damages

The Unruh Act provides that a plaintiff who experiences discrimination is entitled to $4,000 for each occasion on which he or she is denied equal access to an establishment covered by the Act.  Cal. Civ. Code § 52(a); *Hubbard*, 408 F. Supp. 2d at 931-32.  Recovery under the act requires a showing of denial of "full and equal" access to an establishment, not wholesale exclusion.  *Hubbard*, 408 F. Supp. 2d at 932.  Plaintiffs have made a more than sufficient showing in this regard, and seek $8,000 each for the two occasions on which they encountered accessibility obstacles at GD.  They forego claims of $4,000 each for the one occasion on which they allegedly were deterred from making a trip to GD.  Having stated a viable Unruh Act claim arising from their two visits to GD, plaintiffs are entitled to a total of $16,000 in statutory damages.

### 3.   Attorney Fees and Litigation Costs

Both the ADA and the Unruh Act entitle prevailing plaintiffs to attorney fees and litigation costs.  42 U.S.C. § 12188(a); Cal. Civ. Code § 52(a); *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002).  The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Plaintiffs' counsel Thomas Frankovich offers a thorough description of his qualifications and comparison of his $500 per hour rate charged in this

United States District Court
Northern District of California

case to the attorney fee rate charged in other ADA cases.  He furthermore has submitted an itemization of how his time, totaling 30.2 hours, was spent on this case.  At a rate of $500 per hour and with assistance from two paralegals compensated at $40 per hour, plaintiffs request a total of $15,696 in attorney fees.  As this amount is reasonable and adequately justified, plaintiffs' request for fees is granted.

Their request for litigation costs is also modest and well justified.  Plaintiffs itemize the amounts spent on filing fees, experts, photocopies, postage and other typical litigation expenses, totaling $2,177.60.  Plaintiffs are thus entitled to the requested litigation costs.

## V.     CONCLUSION

For all of the aforementioned reasons, plaintiffs' motion for entry of default judgment must be granted.  Defendants are liable jointly and severally for bringing GD's premises into compliance with the ADA in accordance with the above discussion by July 31, 2016; and for $16,000 in statutory damages, $15,696 in attorney fees, and $2,177.60 in litigation costs, for a total monetary award of $33,873.60.

**IT IS SO ORDERED**.

Dated: August 20, 2015

_____

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California